T. J. LOWE v. LEON AND H. BLUM.

NOVATION.  In order to complete the contract of novation, it is necessary that the party seeking to show that he is entitled to the benefit of such a contract and to be released from liability, shall be able to show, not only that the new party undertaking to assume the liablility shall have completed such a contract with him, but that such new party shall also have so sufficiently and fully contracted with the creditor, and that the creditor shall have plainly signified his assent to the discharge of the debtor, but also his assent to the new liability and that such new liability shall be so understood and perfected as that the creditor shall be able to hold the new debtor legally liable thereupon.

*Error from the District Court of Logan County.*

*Huston & Huston*, for plaintiff in error.

*Keaton & Cotteral*, for defendants in error.

The opinion of the court was delivered by

MCATEE, J.:  This was an action begun on the 18th day of May, 1892, by the plaintiffs below, defendants in error here, against the plaintiff in error, defendant below, to recover the amount due upon three several promissory notes and upon an open account aggregating

the sum of five thousand, four hundred and seventy-five dollars and forty-six cents.

The notes were executed at Texarkana, Texas, September 1, 1886, for the sum of one thousand, five hundred and seventeen dollars and thirty-four cents, payable ninety days after date with twelve per cent. interest from maturity until paid; at Galveston, Texas, June 11, 1886, for the sum of six hundred and fifty-seven dollars and seventy cents, payable October 1, 1886, at the rate of ten per cent. from maturity until paid; and at Galveston, Texas, June 11, 1886, for the sum of six hundred, fifty-seven dollars and seventy cents, payable November 1, 1886, with interest at the rate of ten per cent. per annum from maturity until paid. Each of said notes provided that ten per cent. attorney's fees should be paid by the maker, if the notes were placed in the hands of attorneys for collection. The notes were endorsed by Mungesheimer & Klein.

The open account was for merchandise furnished in June of 1886, upon which a credit appeared dated June 26, 1886. Judgment was demanded by the plaintiffs for the face of said notes with accrued interest, and ten per cent. attorney's fees, together with the amount due on said open account with interest until paid.

The defendant answered, and with other defenses, pleaded payment of the notes sued upon, to the firm of Mungesheimer & Klein, alleging that Mungesheimer & Klein were the agents of plaintiffs, and that plaintiffs had ratified a settlement alleged to have been made by the plaintiff in error with Mungesheimer & Klein.

The case came on for hearing in the district court upon the 19th day of October, 1894, and was tried by the court.

The following findings of fact and conclusions of law

were made by the court, and judgment thereupon was rendered against the plaintiff in error, defendant below:

"1.   That the notes sued upon in this action were given at the time indicated on the face of the notes.

"2.   That the notes were given in payment for goods, wares and merchandise purchased by the defendant of the plaintiffs, and that such purchases were made through Mungesheimer & Klein, but that the payments on such notes were to be made directly to Leon and H. Blum.

"3.   That prior to the time said notes became due, the defendant in this case became insolvent.

"4.  · That Mungesheimer & Klein were endorsers upon the notes given by the defendant to the plaintiffs, which notes are the basis of this suit. That such endorsements were made at the time the notes were executed.

"5.   That prior to the time the notes became due, the defendant became insolvent, and to secure the payment of these notes and other notes upon which Mungesheimer & Klein were sureties, the said Mungesheimer & Klein and one Joseph Marx entered into a contract with the defendant, wherein, for a valuable consideration, they agreed to pay all of the notes upon which Mungesheimer & Klein were endorsers or sureties, and said agreement included the notes sued upon in this action."

The following is a true and correct copy of said agreement:

" *State of Texas, County of Bowie.*

" We the undersigned, Mungesheimer & Klein and Joseph Marx of Bowie county, Texas, said firm composed of (Mungesheimer & Klein) Max Mungesheimer and L. Klein, each for ourselves individually, said Mungesheimer & Klein as a firm and co-partnership, and the said Joseph Marx, as Prest. of the Citizens bank of Texarkana, Texas, for and in consideration of the transfer to the said Joseph Marx of a certain stock of goods, wares and merchandise situated in the town of Texarkana, Texas, and also a certain stock of goods, wares and merchandise at Bettie station, Upshur county, Texas, and

also what is known as Bettie mill, in said county, with
appurtenances, fixtures, etc., thereto belonging and all
lumber belonging to T. J. Lowe on the yards of said
mill, and also certain real estate in the county of Upshur,
and timber in the county of Upshur and Bowie, and also
any and all monies that may be now due or become due
from the Ark., St. Louis & Texas R. R. Co., which trans-
fer is evidenced by bills of sale and deeds of convey-
ance, bearing this date by the said T. J. Lowe, acting
through his agent and attorney, J. L. Camp, Jr., we, the
said Mungesheimer & Klein, as a firm as aforesaid, and
each individually, and the said Joseph Marx for himself,
and as President of the Citizens bank of Texarkana,
do hereby obligate and bind ourselves as aforesaid to
release and relieve the said T. J. Lowe from any and all
obligations unto us, either individually as a firm of
Mungesheimer & Klein, as aforesaid, and the said Joseph
Marx, either individually or as president of the Citizens
bank of Texarkana, Texas, as aforesaid, and we hereby
give this unto the said T. J. Lowe, our full and complete
receipt for the consideration aforesaid to the said T. J.
Lowe in settlement to this date of all notes, dues and
obligations to us, or either of us, either individually as
said firm or to the said Marx, as president of the said
bank.   We hereby also, for the consideration aforesaid,
the payment of which is fully acknowledged, each for
ourselves· individually, and the said firm of Munges-
heimer & Klein, and the said Joseph Marx, as president
of said bank, do hereby obligate and bind ourselves unto
the said T. J. Lowe to fully pay off and discharge all
and every obligation, either by note, account or bond or
otherwise upon which the said T. J. Lowe is principal
and we are bound, either as sureties for the said T. J.
Lowe, as endorsers or otherwise, and each and all of said
obligations, notes, bonds, or other evidences of indebted-
ness of the said T. J. Lowe to any and all persons, and
upon which we may be bound, either as endorsers or
security for the said Lowe, individually as a firm of
Mungesheimer & Klein or said Marx as president of said
bank.   We obligate ourselves hereby, at maturity of the

Lowe v. Blum.

same, to take up, fully pay off and discharge the original of said note or obligation, we either or all of us may be so bound as endorsers or in any manner security for the said T. J. Lowe as principal, the same to deliver unto the said T. J. Lowe, and the same to cancel, said amount due, to the said Mungesheimer & Klein and to the said Marx as president of said bank, and the amount for which the said persons are security for the said T. J. Lowe, and which they hereby obligate themselves to fully pay off and discharge, is estimated at eighty-five thousand dollars, and we further obligate ourselves to fully pay off and discharge such balance and balances as may be due upon any or either or all of the property this day conveyed, and to release the said T. J. Lowe fully and completely from any liability therefor or upon any o'her obligation whatsoever, of any character or kind, either due to us by him or upon any other demand or claim upon which we may be liable or bound as security or otherwise with the said T. J. Lowe.

"Witness our hands this the —— day of September, 1886.

"Mungesheimer & Klein,
"Max Mungesheimer,
"Larry Klein,
"J. Marx,
"J. Marx,
"Pt. Citizens Bank, Texarkana, Texas.

"*State of Texas, County of Bowie.*

"Before me, A. J. Purcell, a notary public in and for said county and state, personally appeared Max Mungesheimer and Larry Klein, in and for themselves individually and each for the firm of Mungesheimer & Klein, and Joseph Marx for himself and as president of the Citizens' bank of Texarkana, Texas, well known to me to be the persons whose names are signed to the foregoing, and acknowledged to me that they, for the said firm of Mungesheimer & Klein and individually, and the said Joseph Marx as president of said bank, and individually,

signed and executed the same for the purposes and con-sideration therein expressed.

"(SEAL)                                    A. J. PURCELL,
                "Notary Public, Bowie Co., Tex.

"6.  That the said contract was entered into by the parties above named at a·time when Mungesheimer & Klein and Joseph Marx were solvent, and amply able to carry out the agreement entered into; and that all of said parties were solvent for one year after the execution of said contract.

"That shortly after such agreement was entered into, the defendant in this case, in a conversation with Leon ` Blum, one of the partners of the firm of Leon & H. Blum, advised said Leon Blum of the contract, and of the steps he had taken to secure to them the payment of the notes sued upon in this case.  That in such conversa-tion, said Leon Blum stated to the defendant that that was all right, that he knew the parties, and that they were good, and that he was well satisfied with the arrangement made.

"The evidence in this case further shows that about the maturity of said notes, the same were forwarded to a bank located at the place where the defendant had for-merly been engaged in business for collection.  That at the time the defendant was not living at that place. That the notes were presented to Mungesheimer & Klein, endorsers upon said notes, for payment; and that payment was refused and the notes returned to the plaintiffs.

"That on May 22, 1888, the plaintiffs wrote the defendant, calling his attention to the non-payment of the notes and the promise theretofore made of a settlement; that two days thereafter the defendant wrote plaintiffs a letter, both of which letters are attached hereto and made a part of these findings of fact, and marked 'Exhibits A and B.'

"That it does not appear from the evidence that any further or other communications were made by the plain-tiffs to the defendant or attempted to be so made until a short time prior to the bringing of this action, at which

time the notes were received by the attorneys for the plaintiffs at this place and at this place presented to the defendant for payment.

"It does not appear from the evidence that the account sued upon was ever presented to the defendant for collection until the same was received by the attorneys for plaintiffs at this place; that such time was long subsequent to the date when the statute of limitations of the state of Texas operated in favor of the defendant to bar said account.

"The court further finds that after the notes were given by the defendant and endorsed by Mungesheimer & Klein, the same were by the defendant turned over to the plaintiffs, and at all times since the notes have been in the possession, owned and under the control of the plaintiffs; that they had not in any manner parted with their interest or title to said notes.

"From the above findings of fact, the court concludes, as a matter of law, that the contract entered into between the defendant and Mungesheimer & Klein and Joseph Marx was not binding upon the plaintiffs, Leon & H. Blum; that before said contract could be binding upon said parties they must have agreed to have released the defendant from any obligation which the defendant was under to have paid such sum of money as indicated by the notes. That no part of said notes having been paid, the defendant is still liable for the full sum stated in the notes, together with interest at the rate called for in said notes; and that he is not liable upon that portion of the suit for the account; that judgment be rendered in favor of the plaintiffs in the sum of $6,037.27 and costs of suit.

"Counsel for the plaintiff requests that the court render judgment for an additional sum of ten per cent. of the amount of said notes as attorney's fees, as stipulated therein; which request the court refuses to grant, to which action of the court plaintiffs then and there excepted. Plaintiffs also except to that part of the judgment of the

court which disallows the account and which refuses recovery upon the account sued upon.

"To all of which findings of fact and conclusions of law, the defendant then and there excepted.

"Whereupon the defendant filed his motion for judgment upon the findings of fact; which motion was by the court overruled and excepted to.

"Thereupon the court renders judgment in favor of the plaintiff for the principal sum named in the notes, as set forth in said notes, and with interest at the rate named in said notes from the time interest became due, under the terms of said notes."

The following are copies of exhibits A. and B.:

"EXHIBIT A.

"GALVESTON, TEX., May 22, 1888.

"*Mr. T. J. Lowe, Gilmer:*

"DEAR SIR—Our Mr. Sylvain Blum begs to remind you of your kind promise made to him whilst in the city, in connection with your notes held by us. We have been expecting to hear from you with an offer of a settlement, but so far nothing has been received, and we would be pleased to receive a reply in conformity with your promise. Yours truly,

"LEON & H. BLUM."

"EXHIBIT B.

" GILMER, TEXAS, May 24, 1888.

" *Messrs. Leon and H. Blum, Galveston, Texas:*

"GENTLEMEN—Yours received and contents noted and will say in answer, I have been in no condition to offer any settlement of any kind, but think I can this fall. I wish to make an equitable and fair settlement with you gentlemen, and you need have no fears but that I will. I am doing all I can to get around, and you can rest assured I fully appreciate your kindness.

"I hope to be down next month and will see you in person. I am, truly yours,

" T. J. LOWE."

Plaintiffs also excepted to that part of the judgment of the court which disallowed the account, and which refused recovery upon the account sued upon.

The defendant excepted to all the findings of fact and conclusions of law and moved for judgment upon the findings of fact, which motion the court overruled, and excepted to, and thereupon judgment was entered up for the principal sum named in the notes, as set forth therein, with interest at the rate named, from the time interest became due upon the terms stated in the notes. Motion for a new trial was duly made by the defendant and overruled. No motion for a new trial was made by the plaintiff, the defendant in error.

Various assignments of error to the effect that the judgment was inconsistent with the findings of fact, contrary to law, and that the court erred in finding that the contract entered into was not binding upon the plaintiffs; in overruling the defendant's motion for judgment, and motion for a new trial, have all been treated with oral argument, and in the brief of plaintiff in error upon the proposition that, the contract set forth in the findings of fact was one of novation, in which the contracting parties, Mungesheimer & Klein and Marx, were substituted, and taken in lieu of the plaintiff in error, and were so accepted by the defendants in error, and the plaintiff in error was thereby released and discharged from liability on account of the notes and accounts sued on.

In order to sustain this contention it is argued that: "A new party in the person of J. Marx has been introduced, and among the terms of the contract is the expressed agreement to 'release the said T. J. Lowe fully and completely from any liability upon' the notes sued upon," and that, shortly after the contract was made between Lowe and Mungesheimer & Klein and J. Marx con-

cerning Blum, Lowe advised Leon Blum of all the terms thereof, and he in reply stated that, "that was all right, that he knew the parties and that they were good, and that he was well satisfied with the arrangement made," and that thereby Blum and his firm became parties to that contract, and were bound by its terms to the same extent as though he had signed the firm name to the written contract.

Upon this contention it is to be observed, that the contract was the contract of Mungesheimer & Klein, as a partnership and individually, and of J. Marx, as president of the Citizens bank of Texarkana, and of J. Marx, individually, with the plaintiff in error, and provided that "we do hereby obligate and bind ourselves as aforesaid to release and relieve the said T. J. Lowe from any and all obligations unto us, either individually, as the firm of Mungesheimer & Klein, as aforesaid, and the said Joseph Marx, individually or as president of the Citizens bank of Texarkana, Texas, as aforesaid, and we hereby give this unto the the said T. J. Lowe, our full and complete receipt for the consideration aforesaid to the said T. J. Lowe, in settlement of all notes and dues and obligations to us, or to either of us, either individually, as said firm, or to the said Marx, as president of the said bank, * * * * and do hereby obligate and bind ourselves unto the said T. J. Lowe to fully pay off and discharge all and every obligation, either by note, account, or bond or otherwise upon which the said T. J. Lowe is principal and we are bound, either as sureties for the said T. J. Lowe, as endorsers or otherwise, and each and all of said obligations, notes, bonds, or other conveyances or indebtedness of the said T. J. Lowe to any and all persons, and upon which we may be bound either as endorsers or sureties for the said Lowe,

individually, or as a firm of Mungesheimer & Klein, or said Marx, as president of said bank;    *    *    *    *
and we further obligate ourselves to fully pay off and discharge such balance or balances as may be due upon any or either or all of the property this day conveyed, and to release the said T. J. Lowe fully and completely from any liability therefor, or upon any other obligations whatsoever, of any character or kind, either due to us by him or upon any other demand or claim upon which we may be liable or bound as sureties or otherwise with the said T. J. Lowe."

These obligations, as well as all the obligations of the contract, were made directly by the contracting parties to the plaintiff in error. In consideration of them he had conveyed his property to Mungesheimer & Klein and J. Marx.

The conveyance of property was manifestly made for the protection of Mungesheimer & Klein and of Marx, in order to ensure them from losses liable to enure to them, on account of advances, and as security.

The contract was not made with the defendants in error. The obligations of the contract run to the plaintiff in error. The defendants in error are not mentioned in the contract. They appear to have been at the time the contract was made, no otherwise considered in it, than as they may have been included with other creditors of the plaintiff in error, to whom Mungesheimer & Klein had become sureties for the plaintiff in error. So far as the terms of the contract are concerned, the defendants in error do not appear to have been consulted. The whole arrangement was completed before they were advised of it. The contract does not provide that they should release the plaintiff in error and accept Mungesheimer & Klein and J. Marx as their debt-

ors upon the notes and accounts sued upon in lieu of the plaintiff in error. The stipulations for the protection and release of the plaintiff in error from any further obligations runs from the parties who made the contract. The defendants in error are by the terms of the contract in no way sought to be precluded from any remedy against the plaintiff in error. When the defendant in error, Leon Blum, was subsequently informed of the arrangement he stated to the plaintiff in error, that, "that was all right, that he knew the parties, and that they were good, and that he was well satisfied with the arrangements made." But there are no words here any otherwise than the contract itself, by which it can be shown that the defendants in error ever agreed to release the plaintiff in error upon the notes sued upon, or that the possession of the notes ever changed or was sought to be changed, from the defendants in error, or that Mungesheimer & Klein and J. Marx ever met the defendants in error and agreed with them to pay off the notes and accounts sued upon, provided the defendants would release the plaintiff is error from any further obligation thereupon. All of which would have been necessary in order to constitute a new contract, the contract of novation, in which the liability of the plaintiff in error, upon the notes and accounts sued upon, to the defendants in error, was obliterated, and Mungesheimer & Klein and J. Marx accepted in his lieu and stead in such a manner as that suit might be brought against them upon the notes and accounts sued upon in this case.

The findings of fact by the court includes no statement whatever that the debt represented by the notes and contract sued upon was discharged, and that Mungesheimer & Klein and J. Marx had become liable therefor. (*Parsons on Contracts*, 1, 219; *Campbell v. Clay*, 36 Pac.

Rep. 909, [Colo.]; *Ferguson v. McBean*, 35 Pac. Rep. 560, [Cal.]; *Black v. Decamp, et al.* 78 Ia. 718; *Cornwell v. Megins*, 39 Minn. 407; *Johnson v. Rumsey*, 28 Minn. 531; *Haubert v. Mausshardt*, 26 Pac. Rep. 899, [Cal.]).

It is contended in the brief of the defendants in error that the court below erred in disallowing the ten per cent. attorney's fees upon the amount of the notes at the time judgment was rendered as provided in each of said notes. No motion was made by the defendants in error for a new trial and no assignments of error have been made by the defendants in error, and the application of the defendants in error, asking that the judgment of the court below be increased so as to contain ten per cent. upon the amount thereof as attorney's fees cannot be sustained. The judgment of the court is affirmed.

Dale, C. J., having presided in the case below, and Bierer, J., having been of counsel, not sitting; all the other Justices concurring.